Charles K. MONIN, Jr.; Monin Trucking, Inc. Trade Winds Transit, Inc., Appellants,

v.

Paul B. MONIN; Carolyn Backherms; Roger Leggett; Monin, Inc.; James A. Monin; Joseph E. Monin; Raphael Monin; William Monin; Linda Roby; Charles C. Simms, Iii; Martha Wheeler, Appellees.

and

Paul Monin; Carolyn Backherms; James A. Monin; Joseph E. Monin; Raphael Monin; William Monin; Linda Roby; Martha Wheeler, Cross–Appellants,

v.

Charles K. Monin, Jr.; Bardstown Warehousing, Inc.; Land Enterprises, Inc.; Roger Leggett; Monin Five, Inc.; Monin Trucking, Inc.; Donald Monin; Monin, Inc.; Trade Winds Transit, Inc.; Trans–American Freight Brokers, Inc., Cross–Appellees.

Nos. 2003–CA–000193–MR, 2003–CA–000543–MR, 2003–CA–000659–MR.

Court of Appeals of Kentucky.

Dec. 30, 2004.

As Modified Jan. 21, 2005.

Marshall V. Gaither, PeWee Valley, KY, for Appellants/Cross–Appellees Charles K. Monin, Jr; Trade Winds Transit, Inc.; and Monin Trucking, Inc.

John S. Kelley, Jr., Bardstown, KY, for Appellees/Cross Appellants Paul Monin; Carolyn Cross–Appellants Backherms; James A. Monin; Joseph E. Monin; Raphael Monin; William Monin; Linda Roby; Martha Wheeler.

James H. Abell, Bardstown, KY, for Appellee/Cross–Appellee Roger Leggett.

Before COMBS, Chief Judge; BARBER, Judge; MILLER, Senior Judge.[1]

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice

## OPINION

MILLER, Senior Judge.

These appeals (Case 2003–CA–000193–MR and Case 2003–CA–000543–MR) and cross-appeal (Case 2003–CA–000659–MR) arise out of Civil Action No. 94–CI–00056 in the Nelson Circuit Court. We affirm in part, reverse in part, vacate in part, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1959, Charles K. Monin, Sr., and his wife Thelma, and Charles K. Monin, Jr. and his wife Rosalie, purchased approximately 150 acres of land in Nelson County, Kentucky. The land now adjoins the city limits of Bardstown and it is said constitutes some of the most valuable realty in Nelson County.[2]

On May 21, 1975, Charles, Sr., and Charles, Jr., together with their respective wives, formed Monin, Inc. Each of the parties owned a 25% share of the corporation's capital stock, of which it appears there were 2,000 shares outstanding.

Through deeds dated January 14, 1975, and March 29, 1982, the farm was deeded to Monin, Inc. It seems that the farm was the primary asset of the corporation.

Thelma died in 1984, with Charles, Sr., succeeding to her interest in the corporation, making him a 50% owner. In 1987 Charles, Sr. died. Under his will, his 50% share of Monin, Inc. stock passed to his ten children in equal shares.[3] In January 1990, Charles, Jr.'s wife Rosalie died, with her interest passing to him.

At this point in time, Charles, Jr., owned 55% of the capital stock in Monin, Inc., and each of his other nine siblings owned 5% of the stock.

For divers reasons, the siblings fell into disagreement over the operation and management of the corporation. The disagreements, among other things, concerned Charles, Jr.'s occupancy and use of corporate property.

In February 1994, Charles, Jr., and Don filed the instant litigation against the remaining siblings.[4] Through a counterclaim and third-party complaint filed November 12, 1996, the cross-appellants requested, inter alia, the dissolution of Monin, Inc. and the appointment of a Receiver to accomplish same. On August 15, 1997, the trial court entered an order granting the cross-appellants requests as to the dissolution of Monin, Inc., and the appointment of a receiver. On October 24, 1997, the trial court entered an order appointing one, Roger Leggett as Receiver with the power to wind up the affairs and liquidate the assets of the company. The trial court made the order final and appealable pursuant to CR 54.02. On appeal to this Court, the trial court's dissolution of Monin, Inc., and appointment of a Receiver were affirmed. (Case No.1997–CA–002871–MR).

In December 2000, the cross-appellants named as additional third-party defen-

---

pursuant to Section 110.(5)(b) of the Kentucky Constitution and KRS 21.580.

2. It appears that from the date of purchase Charles, Jr., and his wife (before her death) occupied the farm house located on the property. It also appears that Charles, Jr., has used a portion of the land, at various times, as a base of operations for certain of his business interests.

3. Charles K. Monin, Jr., Donald Monin, Paul Monin, Carolyn Backherms, James A. Monin, Joseph E. Monin, Raphael Monin, William Monin, Linda Roby and Martha Wheeler are the ten children of Charles, Sr. and Thelma.

4. The record reflects that, for the most part, the alignment of interests has been Charles, Jr. and Don against the remaining eight siblings.

dants six corporations controlled by Charles, Jr., to wit: Monin Trucking, Inc.; Trade Winds Transit, Inc.; Land Enterprises, Inc.; Trans–American Freight Brokers, Inc.; Bardstown Warehousing, Inc.; and Monin Five, Inc. The cross-appellants alleged that Charles, Jr., illegally used assets of Monin, Inc., for the benefit of himself and the corporations, including permitting the companies to occupy the property without paying fair rental value. The cross-appellants specifically alleged that Charles had illegally "diverted and arranged to be diverted corporate funds for the purpose of satisfying personal debts and obligations." The cross-appellants sought reimbursement of the allegedly diverted assets *on behalf of Receiver Leggett.*

Leggett then filed an intervening complaint which, as amended, sought reimbursement from Charles, Jr., for the rental value of a residence located on Monin, Inc., property; rental for Monin, Inc., property used by the six corporations in the conduct of their business; reimbursement for the use of Monin, Inc., property for storage in the conduct of the corporations' business activities; and reimbursement for checks cashed by Charles on Monin, Inc., checking accounts.

A bench trial was commenced on May 31, 2002, was resumed on July 12, 2002, and was concluded on August 16, 2002. In the meantime, Leggett filed motions seeking to evict Charles, Jr., and his businesses from the property or to require them to pay ongoing rent, requesting a 10% fee for payment as his compensation as Receiver, and requesting $15,000.00 in attorney fees for his legal counsel in the litigation.

The trial court rendered judgments dated November 22, 2002, January 13, 2003, February 12, 2003, and March 5, 2003. By these judgments Charles, Jr., was directed to pay the Receiver on his claims $11,555.90 in principal and prejudgment interest for wrongful withdrawals from Monin, Inc., accounts; $42,048.06 in principal and prejudgment interest for the past rental value of the farm residence; and $600.00 per month for ongoing rent of the farm residence.

Under the judgments Monin Trucking, Inc., and Trade Winds Transit, Inc., were ordered to pay the Receiver $242,952.53 in principal and prejudgment interest for past rental of the property for their use of the property for business activities and were assessed ongoing rental at the rate of $3,600.00 per month. The judgments granted the Receiver a fee of 7.5% of the sale proceeds of Monin, Inc., and legal fees in excess of $15,000.00.

On the cross-appellants' claims of wrongful withdrawals from Monin, Inc., checking accounts, Charles, Jr., was ordered to *pay the Receiver* $44,749.03 in principal and prejudgment interest. The trial court denied claims against Charles, Jr.'s, other business interests based on lack of evidence and denied some of the claims of the cross-appellants as being barred by the statute of limitations. The trial court also rejected Charles, Jr.'s, counterclaim for reimbursement or credit for sums allegedly paid by him on behalf of Monin, Inc., but permitted credits for rental actually paid by the companies for their occupation of the land. The trial court denied the cross-appellants' request for attorney fees.

We address the many issues raised in these appeals as best we can discern.

## DIRECT APPEALS—CASES 2003–CA–000193–MR & 2003–CA–000543–MR

First, the appellants contend that the trial court lacked jurisdiction to grant judgment in favor of the cross-appellants on the basis that their claims constituted a

shareholder derivative action under KRS 271B.7–400 and that the cross-appellants failed to comply with the statutory requirements for bringing such an action.

Under their third-party complaint filed on December 13, 2000, the cross-appellants sought to recover from Charles, Jr., and/or the corporations under his control funds and assets which the cross-appellants claimed were improperly and illegally obtained from Monin, Inc., from February 13, 1987 (the date of Charles, Sr.'s, death) through October 24, 1997 (the date Leggett was appointed receiver of Monin, Inc.). *The cross-appellants prosecuted their claims on behalf of Monin, Inc., with the understanding that any recovery made on those claims must be provided to Leggett for division under his mandate to wind up the affairs of Monin, Inc.* The cross-appellants were eventually granted a judgment "on behalf of Receiver Leggett" against Charles, Jr., in the sum of $44,749.93 plus post-judgment interest.

■ While the appellants, in the caption of their argument, have framed their argument as a jurisdictional issue, we construe the issue as one of standing. As a court of general jurisdiction, the Nelson Circuit Court has jurisdiction over this type of case and over the parties. However, we agree with the appellants that the cross-appellants do not have standing to bring a claim seeking to recover misappropriated corporate assets on behalf of the Receiver.

"[T]he Supreme Court and this Court have consistently made it clear that a receiver is in *no sense* a representative of any party involved in a litigation; a receiver represents the appointing court, and only the court." *Rosenbalm v. Commercial Bank of Middlesboro,* Ky.App., 838 S.W.2d 423, 429 (1992) (citing *Rapp Lumber Co. v. Smith,* 243 Ky. 317, 48 S.W.2d 17, 19 (1932); *Crump & Field v. First Nat'l Bank of Pikeville,* 229 Ky. 526, 17

S.W.2d 436, 439 (1929); *Moren v. Ohio Valley Fire & Marine Ins. Co.'s Receiver,* 224 Ky. 643, 6 S.W.2d 1091, 1093 (1928); and *Cerwin v. Taub,* Ky.App., 552 S.W.2d 675, 678 (1977)). We think it reasonably follows that the converse is true, and that a Receiver may not be represented by any party involved in litigation but, rather, must act in his own stead pursuant to the authority of the appointing court. We are aware of no authority which would permit the shareholders of a corporation, during the dissolution of a corporation and while the corporation is under the purview of a Receiver charged with winding up its affairs, to bring a lawsuit seeking to recover assets on the behalf of the Receiver. In short, that is the Receiver's obligation, and to permit shareholders to independently bring their own lawsuits on behalf of a Receiver based upon their own judgments as to the winding up of the affairs of the corporation not only undermines the function of the Receiver, but may lead to haphazard and duplicative causes of actions based upon speculative theories by the various shareholders. The marshaling of the corporation's assets is best left to the Receiver who is charged with such duty. KRS 271B.14–320.

In conclusion, we hold that the cross-appellants do not have standing to pursue assets of Monin, Inc. or liabilities owed to Monin, Inc., on behalf of Receiver Leggett. We accordingly reverse that portion of the trial court's judgment granting the cross-appellants a judgment in the amount of $44,749.93 against Charles, Jr., on behalf of Receiver Leggett.

Next, the appellants contend that the trial court erred in its determination that Charles, Jr., had made wrongful withdrawals from Monin, Inc., accounts between October 27, 1997, and April 9, 1998. The trial court determined that Charles, Jr., had no authority to make these withdraw-

als following the appointment of Leggett as Receiver in October 1997. The appellants contend that the withdrawals were proper because the trial court's order dissolving the corporation and appointing Leggett as Receiver was stayed by supersedeas bond during the period of the withdrawals and that the payments were made in good faith to satisfy obligations of Monin, Inc. The trial court addressed this issue as follows:

> After dissolution of Monin, Inc. and the appointment of Leggett as Receiver, Charles wrote checks totaling $8,436.48 on the Monin checking account. Charles argues that the checks were for expenses incurred by the corporation. However, the vast majority were paid to his attorney and CPA.
>
> Resolution of this issue is simple. After Leggett was appointed Receiver on October 24, 1997, Charles had no authority to use Monin, Inc.'s checking account or any other of its assets. Leggett is entitled to judgment against Charles for the amount of those withdrawals, plus interest thereon at 8% per annum from April 9, 1998 (date of last check) to date hereof.

We begin our discussion by noting that this case was tried by the circuit court sitting without a jury. It is before this Court upon the trial court's findings of fact and conclusions of law and upon the record made in the trial court. Accordingly, appellate review of the trial court's findings of fact is governed by the rule that such findings shall not be set aside unless clearly erroneous. Ky. R. Civ. P. (CR) 52.01; *Largent v. Largent*, Ky., 643 S.W.2d 261 (1982). The trial court's application of law, is of course, reviewed de novo.

■ The trial court's finding that the "vast majority" of these expenditures were for Charles, Jr.'s, personal attorney and CPA is supported by substantial evidence and is, accordingly, not clearly erroneous. As the funds were not expended for corporate purposes, the trial court did not err in its determination that Charles, Jr., was liable for reimbursement of the expended funds.

As the expenditures in question were for personal use, we need not decide whether the appellants are correct in their claim that by posting a supersedeas bond Charles, Jr., retained the right to expend funds from the corporate accounts. Even if so, he did not enjoy the right to use corporate funds for personal purposes.

The appellants next contend that they are entitled to a new trial on the issue of rent imputed to Charles, Jr., for his use of the private residence located on Monin, Inc., property and to Monin Trucking, Inc., and Trade Winds Transit for their use of the commercial property located on Monin, Inc., property on the basis that Leggett was permitted to testify on his own behalf as an expert on the fair rental value of the property. The appellants allege that Leggett labored under a conflict of interest in testifying concerning the fair rental value of the property because he stood to profit personally from a higher rental value because his Receiver fee would be based, in part, on the rental value of the property and because he harbored personal animosity against Charles, Jr. The appellants also allege that Leggett did not follow the proper standards for appraising the fair rental value of the property.

■ Leggett was appointed Receiver of Monin, Inc., in October 1997. Leggett is a General Certified Appraiser who has been performing real estate appraisals since 1970. Leggett owns his own appraisal company, L/Appraisals. The company performed over 1000 appraisals, mostly in Nelson County, in 2001. The record discloses that Leggett also owns rental prop-

erty and is familiar with the rental value of properties in Nelson County.

Kentucky Rule of Evidence (KRE) 702, which governs testimony by expert witnesses, provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may provide opinion testimony if scientific, technical, or specialized knowledge will assist the trier of fact. A trial court's determination as to whether a witness is qualified to give expert testimony under KRE 702 is subject to an abuse of discretion standard of review. *Farmland Mut. Ins. Co. v. Johnson,* Ky., 36 S.W.3d 368, 378 (2000); *Fugate v. Commonwealth,* Ky., 993 S.W.2d 931, 935 (1999); *Murphy by Murphy v. Montgomery Elevator Co.,* Ky.App., 957 S.W.2d 297, 299 (1997). "An abuse of discretion occurs when a 'trial judge's decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Farmland Mut. Ins. Co.,* 36 S.W.3d at 378 (quoting *Goodyear Tire and Rubber Co. v. Thompson,* Ky., 11 S.W.3d 575, 581 (2000)).

Given his past education and experience in the field of appraising, Leggett was *qualified to* express an expert opinion on the fair rental value of the residential and commercial property occupied by Charles, Jr., and his companies.

█ With regard to the allegation that Leggett labored under a conflict of interest, we *note* that the fact finder in the case, the trial judge, appointed Leggett as Receiver for Monin, Inc., and was fully aware of any potential conflict in weighing Leggett's testimony. The trial judge was well-positioned to factor this into his determination as to the rental value of the property. Further, we note that the trial court did not accept Leggett's recommendations of fair rental value in full, but, rather, determined a value less than that proposed by Leggett as to the residence. We believe that any conflict of interest on the part of Leggett, whether real or imagined, goes to the weight of his testimony and not to its admissibility. As such, the appellants are not entitled to a new trial on the rental issue on the grounds of Leggett's alleged conflict of interest.

Next, the appellants contend that the trial court erred in its award of a fee to the Receiver of 7.5% of the gross proceeds of the sale of the Monin, Inc., property. The appellants allege that the fee was set without benefit of a hearing; that the Receiver has not provided services to justify a fee of 7.5%; and that the Receiver's fee should be based upon a reasonable hourly rate.

Leggett filed a motion requesting approval of a fee equal to 10% of the purchase price ultimately derived from the sale of Monin, Inc., property. The cross-appellants objected to Leggett's request and argued that the 5% fee for personal representatives as set forth in KRS 395.150, or a fee akin to the one authorized for trustees under KRS 386.180, would be more appropriate.

█ Charles objected in general to an allowance of any fee for Leggett. This blanket objection is, of course, not sustainable. KRS 271B.14–320 provides that "[the] court from time to time during the receivership ... may order compensation paid and expense disbursements or reimbursements made to the receiver ... from the assets of the corporation or proceeds from the sale of the assets." Moreover, the general proposition of law is to the effect that "[i]n the absence of a statute or fixed rule of practice, the amount of a receiver's compensation is within the sound discretion of the court; however, exercise of that discretion is not unbridled and the matter is discretionary only in the sense that there are no fixed rules to determine the proper allowance, and not in the sense that the courts are at liberty to

give anything more than a fair and reasonable compensation or less than such compensation." 75 C.J.S. Receivers § 477 (2002). Further, "[a]n order allowing compensation to a receiver should be made only after notice and a hearing, at which the parties interested have an opportunity of contesting the claim[.]" 75 C.J.S. Receivers § 478 (2002).

■ Through a pretrial order, the trial court ordered that the issue of the Receiver's fee be tried with all other issues joined by the pleadings. However, the parties do not cite to the record of any such hearing, and it is unclear from the record whether a bona fide hearing on the Receiver's fee ensued. As noted previously, the trial court fixed the Receiver's fee at 7.5%. We view this as an arbitrary fixing akin to a real estate commission. Certainly Leggett should not be compensated upon a commission basis, especially where the principal asset of the corporation is real property; rather, he should be reasonably compensated for his services based, among other factors, upon his time, effort, skill, and expertise in marshaling, protecting, saving, and distributing proceeds upon termination of the receivership. *See generally,* Annotation, *Measure and Amount of Compensation of Receiver Appointed by Federal Court,* 6 A.L.R. Fed. 817. We know of no authority, statutory or otherwise, for fixing a receiver's fee upon a commission basis.

In view of the record before us, we are constrained to vacate the award of a 7.5% Receiver's fee and remand for reconsideration, applying the aforementioned principals.

The appellants' next argument is that the Receiver should be removed for failure to carry out his duties in a timely manner and to protect the assets of Monin, Inc.

The appellants provide minimal support for this argument. In total, the appellants'

argument is as follows: "Given the foregoing evidence of the Receiver's admitted lack of impartiality, his failure to carry out his responsibilities, and inability to do his job as mandated by court order, and his excessive request for compensation, the Receiver should be dismissed by the court and replaced without compensation."

■ We find no evidence supporting these allegations, nor have we been directed to any. In fact, it does not appear the circuit court ruled on this issue. CR 52.04 requires a motion for additional findings of fact when the trial court has failed to make findings on essential issues. Failure to bring such an omission to the attention of the trial court by means of a written request will be fatal to an appeal. *Cherry v. Cherry,* Ky., 634 S.W.2d 423 (1982). The thread which runs through CR 52 is that a trial court must render findings of fact based on the evidence, but no claim will be heard on appeal unless the trial court has made or been requested to make unambiguous findings on all essential issues. *Vinson v. Sorrell,* Ky., 136 S.W.3d 465, 471 (2004). Perforce, we are unable to address this issue.

Next, the appellants argue that the attorney fees awarded to counsel for the Receiver should be vacated subject to a hearing on the reasonableness of the fees. The appellants also allege that the trial court erred by sealing the itemized listing of the fees on the basis of attorney-client privilege.

In the course of this litigation, the trial court appointed Charles Simms, III, to represent Leggett through an order which set various conditions and limitations on that representation.

At the conclusion of the proceedings, Simms tendered a request to the trial court of fees totaling $15,225.00. Simms submitted an itemized list of services ren-

dered from June 18, 2001, through September 5, 2002. All charges were based upon a $100.00 per hour cap as imposed by the trial court. The trial court further took "judicial notice of the activities involving Simms' representation of Leggett, and the fact that those activities support Simms' claim that he had expended 150.25 hours on behalf of Leggett."

KRS 271B.14–320(5) provides that "[t]he court from time to time during the receivership or custodianship may order compensation paid and expense disbursements or reimbursements made to the receiver or custodian and his counsel from the assets of the corporation or proceeds from the sale of assets."

The $100.00 per hour cap set by the trial court is not unreasonable. Moreover, the appellants have not identified any factors to refute the trial court's determination that the quantity of hours is reasonable. "A receiver, being entitled to the assistance of counsel in proper cases, will be allowed reasonable and proper fees in this behalf[.]" 75 C.J.S. Receivers § 466 (2002). The trial court "fixes the compensation, if any, to be allowed for the services of an attorney for a receiver, . . . [and] is vested with discretion in the matter." 75 C.J.S. Receivers § 468 (2002). In sum we hold that the trial court did not abuse its discretion in setting a fee for Mr. Simms of $15,225.00 based upon 150.25 hours at $100.00 per hour.

The trial court did not address the issue of the sealing of the attorney fees invoice, a fact which prevents our review of the issue. However, we note that the itemization of a legal services invoice would not appear to fall within the attorney-client privilege as such a listing is not a communication by Leggett to Simms, nor is such a listing work product as it does not involve the thought processes of Simms in evaluating and litigating Leggett's claims. *See* KRE 503.

The appellants' last argument is that the trial court erroneously denied Charles, Jr., an offset, reimbursement, or credit for amounts he spent out of pocket on behalf of Monin, Inc.

The appellants allege that $7,000.00 in rental payments made by Monin Trucking, Inc., was not properly credited in the final judgment calculation. On page 10 of the trial court's November 22, 2002, order, the trial court acknowledged the validity of the payments and stated "Charles, Monin Trucking, Inc., and Trade Winds Transit, Inc. should be given credit for those payments." It is unclear from the later orders whether these offsets were properly credited to the appellants. We accordingly remand for clarification by the trial court. If the appellants are correct and the offsets were not included in the final judgment calculation, a $7,000.00 offset should be credited to the appellants.

The appellants also contend that they are entitled to an offset of $4,960.56 consisting of a payment of $438.78 for insurance premiums paid on the farmhouse; $2,941.53 for property taxes paid on the farm; and $1,580.25 for City of Bardstown/Industrial District taxes paid. The appellants allege that the expenses were paid by Charles, Jr., out of his own pocket, and that he is accordingly entitled to an offsetting credit in the judgment calculation. While it appears that the appellants raised these offsets during the trial proceedings, it does not appear that the appellants' entitlement to the credits was addressed in either the trial court's November 22, 2002, order or in any of the three subsequent orders, nor does it appear the appellants brought the omission to the attention of the trial court.

As the appellants did not make the proper request for findings concerning these

offsets subsequent to the trial court's November 11, 2002, order, the issue is not properly preserved for our review. CR 52.04; *Vinson v. Sorrell,* 136 S.W.3d at 471; CR 52.04. Accordingly we are unable to address same.

## CROSS–APPEAL—CASE
## 2003–CA–000659–MR

In their cross-appeal, the cross-appellants contend that, for various reasons, the trial court erred in its ruling that a portion of their claims was barred by the statute of limitations. The trial court allowed only those claims which existed within the five years immediately prior to December 13, 2000, the date the cross-appellants first raised their claims seeking reimbursement for amounts allegedly wrongfully withdrawn from Monin, Inc. by Charles, Jr.

Based upon our disposition of the cross-appellants claims in the direct appeal wherein we held that the cross-appellants did not have standing to prosecute a claim on behalf of Receiver Leggett, all issues raised by the cross-appellants in their cross-appeal are moot. Hence, we need not address those issues on the merits.

## CONCLUSION

In conclusion, we affirm as to all issues raised in these appeals with the exception that we reverse as to the money judgment in the amount of $44,749.03 awarded to the cross-appellants on behalf of the Receiver.

We remand as to the issue of whether the appellants were given proper credit for $7,000.00 the trial court determined they were entitled to as an offset against the judgment for rental. The trial court shall reconsider this issue.

We further vacate the award of a 7.5% Receiver's fee and remand for reconsideration of the compensation to be awarded in light of the authorities cited herein.

Finally, let us note that litigation among these parties has been expensive and time consuming for all concerned. Having ordered the dissolution of Monin, Inc., it seems to us that the trial court, through its Receiver, should hastily conclude the marshalling of the assets of Monin, Inc., and the winding up of the affairs of the corporation. We note that in its final distribution of the assets of the corporation, the trial court has broad equitable powers. Hopefully these powers will be used to bring about a quick and proper determination of this matter.

For the foregoing reasons the judgments of the Nelson Circuit Court are affirmed in part, reversed in part, vacated in part, and remanded for additional proceedings consistent with this opinion.

ALL CONCUR.