**Ralph Edward FEHR, Appellant/Cross–Appellee,**

v.

**Maren Mitchell FEHR, Appellee/Cross–Appellant.**

Nos. 2007–CA–001495–MR, 2007–CA–001507–MR.

Court of Appeals of Kentucky.

Oct. 3, 2008.

Discretionary Review Denied by Supreme Court June 17, 2009.

Rocco J. Celebrezze, Jennifer S. Begley, Louisville, KY, for appellant/cross-appellee.

Vincent J. Eiden, Crestwood, KY, for appellee/cross-appellant.

Before MOORE and THOMPSON, Judges; HENRY,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

This is an appeal and cross-appeal filed from the findings of fact and conclusions of law entered in a dissolution of marriage action. Ralph Edward Fehr appeals the decision of the Oldham Family Court awarding Maren Mitchell Fehr a villa and a one-half marital interest in a mini-storage warehouse located in St. Maarten of the Netherlands Antilles. He alleges that as a result of the court's award, he was denied his nonmarital interest in those properties. Maren contends that the family court lacked subject matter jurisdiction over the property located in the Netherlands Antilles, or alternatively, that the law of that country should apply to the division of the property. She further challenges the admission of appraisals performed by an unlicensed real estate agent. We initially address the issue of jurisdiction because, if lacking, the issues raised by Ralph are moot.

The parties were married on August 7, 2000, in St. Maarten. At the time of the marriage, both were Kentucky residents and Ralph continued to reside in this state throughout the marriage. During the marriage, Maren primarily resided in St. Maarten but did not change her United States citizenship.

In June 2004, Ralph filed a petition for dissolution in Oldham County, Kentucky, wherein he alleged that he had been a resident of Kentucky for at least 180 days preceding the filing of the petition. In her response, Maren admitted that Ralph resided in Kentucky for 180 days prior to the filing of the petition and further, that he had resided in Oldham County continuously for at least seven years. She also admitted as alleged in the petition that she had been a resident of Kentucky for "several years." Documents filed in the record, including her 2005 tax returns and insurance documents, demonstrate that her domicile was within the United States.

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

The record further reveals that the first objection Maren made to the jurisdiction of the Oldham Family Court was two years after the filing of the dissolution petition.

■ Maren does not dispute that Ralph's domicile was Kentucky for 180 days prior to the filing of the petition for dissolution of marriage. By her own admissions, she was likewise domiciled in this state. Although she resided in St. Maarten for much of the marriage, at the time Ralph filed his petition, there was absolutely no evidence that it was her intent to establish permanent residency in that country and abandon her Kentucky domicile. *St. John v. St. John*, 291 Ky. 363, 163 S.W.2d 820, 822 (1942). The family court had subject matter jurisdiction and personal jurisdiction over the parties to grant the dissolution. KRS 403.140; *Jeffrey v. Jeffrey*, 153 S.W.3d 849 (Ky.App.2004). Thus, the issue is whether the court's jurisdiction extended to the property located in St. Maarten.

■ Jurisdiction is an essential prerequisite to any judicial action. It is the "ubiquitous procedural threshold through which all cases ... must pass prior to having their substance examined." *Nordike v. Nordike*, 231 S.W.3d 733, 737 (Ky. 2007). Maren's objection to the assertion of the court's jurisdiction is premised on its lack of power to decide the parties' interest in the St. Maarten property and, therefore, is a question of subject matter jurisdiction. Contrasted to a claim that personal jurisdiction is lacking, subject matter jurisdiction cannot be waived or otherwise conferred by the parties. It either exists or it is absent. *Id.*

■ It is well established law that Kentucky courts are without jurisdiction to settle title or possessory rights to land outside the Commonwealth. *See Kaplon v. Chase*, 690 S.W.2d 761 (Ky.App.1985).

However, it is equally accepted that a court may, through an *in personam* decree, affect title to land in another state. The distinction between an action to adjudicate title to land and that to determine the parties' interests in land was recognized long ago in our jurisprudence and has been subsequently reaffirmed. *See McQuerry v. Gilleland*, 89 Ky. 434, 12 S.W. 1037 (1890); *Kaplon*, 690 S.W.2d at 763. Although a Kentucky court does not have jurisdiction to quiet title or to secure possession of foreign land, *in personam* jurisdiction is sufficient to decide the interests of the parties in that same land. *See Kaplon*, 690 S.W.2d at 763.

In the context of a marital dissolution action, the law expressed in *McQuerry* and its progeny has been applied and further explained. In *Becker v. Becker*, 576 S.W.2d 255 (Ky.App.1979), the Court addressed the jurisdiction of a Kentucky court to decide the parties' marital interests in property located in another state. The circuit court found that a residence in Florida was marital property and awarded a sixty percent interest to the husband and forty percent to the wife. On appeal, when addressing the challenge to the circuit court's jurisdiction over the Florida property, the court indulged in an analysis of the United States Supreme Court's decision in *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909), and wrote the following summation of the law:

As regards the question of the power of a court to compel a party before it to convey real property located in another state, we believe that the United States Supreme Court firmly established such authority in *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909). There, the Court held that while it was clear that the disposition of real estate was to be governed by the law of the state where the land was situated, and that no

decree or conveyance of property except by the party vested with title was effective beyond the jurisdiction of that court, a court of equity with *in personam* jurisdiction could, in the proper case, by virtue of its power over the person of a party, "'compel him to act in relation to property not within its jurisdiction.'" 30 S.Ct. at 7. The Court further explained that such a "'decree does not operate directly on the property nor affect the title, but is made effectual through the coercion of the defendant; as, for instance, by directing a deed to be executed or cancelled by or on behalf of the party.'" *Id.* The Court pointed out that this authority stemmed from a limited but well-defined exception to the territorial limitation imposed on the courts of one state over the property of another state. This exception was defined thusly:

> A court of equity, having authority to act upon the person, may indirectly act upon real estate in another state, through the instrumentality of this authority over the person. Whatever it may do through the party, it may do to give effect to its decree respecting property, whether it goes to the entire disposition of it or only to affect it with liens or burdens. 30 S.Ct. at 6.

The Court also stated that while a decree pursuant to such power was not legal title, nor did it transfer legal title, obedience to it could be compelled by contempt, attachment, or sequestration. *Id.* at 257. Based on *Fall*, the Court held that by virtue of the circuit court's personal jurisdiction over the parties, it had the authority and power to indirectly affect the property by compelling the conveyance of the interest.

██ Thus, a court with *in personam* jurisdiction and subject matter jurisdiction over a dissolution action may declare the parties' interests in foreign land. However, consistent with the limitations on the court's jurisdiction, an action to enforce a foreign decree so as to transfer title in accordance with the decree generally requires a separate action in the jurisdiction in which it is located. *See In re Marriage of Kowalewski,* 163 Wash.2d 542, 182 P.3d 959 (2008).

Although *Becker* involved a foreign state rather than a foreign country, its holding is nevertheless applicable to the present case. The family court's decree does not purport to transfer title to the St. Maarten properties but only declares the parties' interests in those properties. The enforcement of that decree and what effect the St. Maarten courts give to the decree is not for this court to resolve.

██ Maren contends that even if the court had jurisdiction to decide the parties' respective marital interests in the property, the family court was required to apply the law of the Netherlands Antilles, which according to an affidavit filed by an attorney in that country, provides for a division in accordance with community property law. We have previously determined that the parties' domicile remained in Kentucky throughout the marriage. Absent an agreement to the contrary, in dissolution of marriage proceedings the law of the marital domicile applies. *See Rowley v. Lampe,* 331 S.W.2d 887 (Ky.1960).

██ There was no prenuptial agreement and no other indication that the parties intended to be governed by Netherlands Antilles' law in the event of dissolution of the marriage. Ralph did file a lien on the St. Maarten villa pending resolution of the dissolution action. However, his action was taken to protect his interest in the property and cannot be deemed a waiver of the application of Kentucky law for the purpose of the dissolution of marriage ac-

tion. It was merely an overt act to preclude Maren from selling the property. We find no error in the family court's application of Kentucky law.

■ We address Maren's final allegation of error which pertains to the family court's reliance on the testimony of Leroy De Weever when determining the value of the St. Maarten properties. De Weever is a resident of St. Maarten but is not a licensed appraiser. However, he testified that it is not customary in that country for appraisers to be licensed and explained his experience as a real estate broker and knowledge in regard to property in St. Maarten. He valued the villa at $705,000 and the value of the M & R Storage Warehouse business at $585,000. Maren contends that De Weever's testimony was inadmissible because he was not licensed in accordance with Kentucky law.

The General Assembly's decision to regulate real estate appraisers through KRS Chapter 324A does not supersede our Rules of Civil Procedure. It remains within the discretion of the trial court to determine whether an expert witness is qualified based on the witnesses' knowledge, skill, experience, training, and education. KRE 702 and 703. Although a license required by statute is relevant in the court's determination, a lack of a real estate appraiser's license or certification does not by itself render the testimony inadmissible. The family court acted well within its discretion when it ruled De Weever's testimony admissible. *Monin v. Monin*, 156 S.W.3d 309 (Ky.App.2004).

We conclude that Kentucky has jurisdiction to resolve the property dispute, that Kentucky law is applicable, and that the admission of De Weever's testimony was within the family court's discretion. We now turn to the errors alleged by Ralph.

## THE CLASSIFICATION OF MARITAL AND NONMARITAL PROPERTY

Each party entered the marriage with premarital property. It is the use of the proceeds from the sale of the parties' properties and premarital assets to purchase the M & R Mini–Storage Warehouse and the St. Maarten villa that is the center of controversy.

We preface our discussion with the applicable standard of review and applicable law. The family court's findings of fact will not be disturbed unless they are not supported by substantial evidence. *Cochran v. Cochran*, 746 S.W.2d 568 (Ky.App. 1988). Findings of fact include the designation of and assignment of value to marital and nonmarital property. Issues raised concerning strictly questions of law are reviewed on a *de novo* basis. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky.App. 2003).

We conclude that the family court's findings of fact are not clearly erroneous and accept those findings as conclusive. However, because the family court did not apply the formula set forth in KRS 403.190 when dividing the parties' marital and nonmarital interests in the St. Maarten villa, we conclude that it erred as a matter of law.

The parties claim both marital and nonmarital interests in both properties located in St. Maarten. Pursuant to the statutory guidelines for the division of property in a marriage dissolution action set forth in KRS 403.190, the family court was required to apply the definitions of marital and nonmarital property set forth in subsection 2 of that statute that provides:

For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(a) Property acquired by gift, bequest, devise, or descent during the marriage

and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

KRS 403.190(2). The method used to divide property consistent with the statute was extensively reviewed and explained in *Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004).

■ The inquiry begins with a three-step process: "(1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties." *Id.* at 264–265. The court further observed that often property will have been accumulated with both marital and nonmarital contributions which renders its division subject to specific rules of common law and, in the initial classification of the parties' interests, the invocation of the trial court's discretion.

An item of property will often consist of both nonmarital and marital components, and when this occurs, a trial court must determine the parties' separate nonmarital and marital shares or interests in the property on the basis of the evidence before the court. Neither title nor the form in which property is held

determines the parties' interests in the property; rather, Kentucky courts have typically applied the "source of funds" rule to characterize property or to determine parties' nonmarital and marital interests in such property. The "source of funds rule" simply means that the character of the property, *i.e.*, whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire the property. (Internal citations and footnotes omitted).

*Id.*

■ When property consists of both marital and nonmarital contributions and has increased in value during the marriage, the application of the principles enunciated in *Sexton* have historically proven challenging. A basis for any inquiry into the status of such property is the reason for the increase. If the value of the nonmarital property after the marriage is attributable solely to economic conditions, the increase is not characterized as marital property. However, if the increase is the result of the joint efforts of the parties it is considered marital property subject to division in equitable proportions. *Travis v. Travis*, 59 S.W.3d 904 (Ky.2001).

The seminal case in the proper division of an increase in marital and nonmarital property is *Brandenburg v. Brandenburg*, 617 S.W.2d 871 (Ky.App.1981). In its effort to restore the nonmarital contribution and the corresponding increase in value during the marriage, the court promulgated what is commonly referred to as the *Brandenburg* formula. *Id.* at 872. The court in *Brandenburg* recognized that monetary contributions are not the only resources that contribute to a marital contribution. Although not equated with a monetary contribution, the parties' efforts expended during the marriage to the in-

crease in value of the property are a consideration in the percentage of marital property awarded. *Id.*

The application of the *Brandenburg* formula proved problematic in *Goderwis v. Goderwis,* 780 S.W.2d 39 (Ky.1989). In that case, prior to the marriage the husband was the sole owner of an auto repair business and, during the marriage, operated it as the sole source of income of the parties. The business increased significantly in value during the marriage. Recognizing that the primary source of the parties' income during the marriage was the auto repair business, the court rejected strict adherence to the *Brandenburg* formula. Applied in the context of business property versus a residence, the court recognized a distinction:

> There has been a certain amount of confusion on the question of how to treat business property which is the primary occupation of one spouse during marriage but which was acquired prior to marriage when it increases in value during the marriage.

> This is not a *Brandenburg* case. The problem with applying Brandenburg to this fact pattern is the difference in the nature of the nonmarital property. *Brandenburg* involved three pieces of rental property owned by the husband before the marriage which increased in value during the marriage. This case involves the business of the husband to which he devoted all his time during the marriage. The fact that it was started before marriage, does not render the entire growth of the business over the course of the parties' 18–year marriage, nonmarital. Here, the auto repair business was the principal source of the marital funds. Accordingly the wife could contribute to the marital assets in her role as a homemaker.

*Id.* at 40. What is gleaned from *Brandenburg* and *Goderwis* is that there is a distinction between nonmarital property operated as business during the marriage with the joint efforts of the parties and residential property, which consistent with its nature, increases in value as a result of economic circumstances.

With these statutory and common law principles as our guide, we now turn to the unique facts of this case.

## ACQUISITION OF THE M & R MINI–STORAGE WAREHOUSE

■ The parties are equal shareholders in M & R Mini–Storage Enterprises, N.V., incorporated pursuant to the laws of the Netherlands Antilles. The corporation was formed prior to the marriage and, in 1999, acquired the M & R Mini–Storage Warehouse for $145,000, financed with a $110,000 loan. Ralph testified that he transferred $66,500 payable to cash to be applied to the purchase and rebuilding of the mini-storage and that he made a $15,250 earnest deposit. He presented checks for further payments made from nonmarital funds toward improvement of the property representing a total investment of $110,692.54. Maren testified that she invested $60,000 in the purchase of the property from funds received from the sale of two prior businesses she owned on St. Maarten and has managed the property since the purchase. According to the testimony of De Weever, the warehouse business is presently valued at $585,000.

The family court found that the warehouse was a joint business venture, declared it to be marital property, and equally divided the parties' interests. Ralph reasons that since his investment in the warehouse business was derived from nonmarital funds, he is entitled to a percentage share equal to his investment as his non-martial property. We conclude that

the trial court's decision was based on the evidence presented and affirm.

This case presents yet another anomaly in the law of the division of property in the context of dissolution of marriage. It is undisputed that prior to the marriage, the parties interacted as business partners entering into ventures with the intent of profit. The family court found that the formation of M & R Mini–Storage Warehouse Inc. and the acquisition of the warehouse property were likewise pursuant to that goal.

Ralph and Maren formed a closely held corporation and entered into that business relationship as business partners, not spouses. From the evidence, it is reasonable to conclude that while Ralph contributed more than Maren financially, she contributed a corresponding amount in her effort as manager of the business both before and during the marriage. Pursuant to *Goderwis*, we hold that the family court acted within its discretion when it found that her nonmarital contribution as manager of the property was equal to the monetary contribution of non-martial funds contributed by Ralph. Under the circumstances, we find no abuse of the family court's discretion when it awarded each party a one-half interest in the M & R warehouse business.

## THE ST. MAARTEN VILLA

 As the family court recognized, the parties' interests in the St. Maarten villa cannot be treated the same as the warehouse business. It was used as a residence to which both parties made substantial nonmarital contributions and its value significantly increased during the marriage. The property was purchased in December 2000, for $342,000 and, at the time of the dissolution of marriage, had increased in value to $705,000.

The villa was titled in the name of C–Island Limited, organized under the laws of the country of Anguilla and of which Maren is the sole director. The family court found that Maren sold her pre-martial home in Kentucky for $101,000 and, from the proceeds, contributed to the purchase of the villa. The court found that Ralph contributed nonmarital funds to the purchase of the villa in the amount of $217,000. Maren did not dispute his contribution.

Despite the evidence that both parties contributed nonmarital funds toward the purchase of the villa, the family court awarded the entirety of the property to Maren. In its order entered addressing the parties' motion to alter, amend or vacate its findings of fact, conclusions of law and final decree of dissolution, the court expressed its reasoning and stated as follows:

For clarification, this Court did not find that Mr. Fehr's nonmarital contribution to the villa property was a gift. However, in consideration of significant other factors including: 1) Mr. Fehr's age and Maren's age; 2) the contribution of each party to the home, including that Maren contributed all the proceeds from the sale of her nonmarital private residence; 3) the speculative nature of the appraisal figure; 4) the difficulties enforcing a Kentucky judgment as it relates to the St. Maarten property; 5) the fact that Maren had rightfully or wrongly titled the home in a corporation solely owned by her, without input from Ralph; 6) that Maren has lived in the home consistently since its purchase; 7) that Maren has limited outside resources; 8) and that the Court, in balancing the equities, ordered no maintenance paid from Ralph to Maren, nor required Ralph to provide any health insurance care for Maren; this Court

made an equitable decision to leave the villa as the sole property of Maren Fehr.

Although the family court's decision was clearly thoughtfully reasoned, it is nevertheless flawed because it is inconsistent with KRS 403.190 and the three-step process required to be applied.

As was emphasized by the Court in *Sexton*, the first step in the three step process is the characterization of the particular property as marital or nonmarital. The parties are then awarded their nonmarital interests *without* deference to other considerations. The court has no discretion to divide nonmarital property but only to restore the property to the contributing party. In this case, the family court ignored the dictates of KRS 403.190 when it awarded the villa to Maren.

Germane to our discussion are two findings made by the family court that are directly contrary to its final result. First, it found that Ralph had contributed approximately $217,000 of non-martial funds to the purchase of the villa and that Maren's nonmarital contribution exceeded $110,000. Second, the family court found that Ralph's nonmarital contribution was not a gift to Maren.

When a nonmarital contribution is undisputed, the party claiming that property as nonmarital is relieved of any obligation to prove otherwise. *Davis v. Davis*, 775 S.W.2d 942 (Ky.App.1989). The only contention offered by Maren to refute the evidence Ralph offered was that his contribution to the villa was a gift to her and, consequently, should not be restored to him. We review this issue as a factual finding subject to the substantial evidence rule. *Ghali v. Ghali*, 596 S.W.2d 31, 32 (Ky.App.1980).

The determination of whether Ralph's contribution to the villa was a gift includes a consideration of the following: (1) the source of the money; (2) the intent of the donor at the time as to intended use of the property; (3) the status of the marriage relationship at the time of the transfer; and (4) whether there was a valid agreement that the transferred property was to be excluded from the marital property. *O'Neill v. O'Neill*, 600 S.W.2d 493, 495 (Ky.App.1980).

We conclude that the family court's explicit finding that Ralph's contribution was not a gift to Maren is supported by substantial evidence in the record. Ralph used his non-martial funds to purchase the residence in St. Maarten as an investment and presumably as a residence while on the island. The fact that Maren titled the property in the name of C–Island has no bearing on the issue. Most telling is Ralph's testimony that he did not intend his contribution as a gift. Based on the evidence, the family court's finding that Ralph's nonmarital contribution was not a gift to Maren is affirmed.

Because the family court found that Ralph and Maren made nonmarital contributions to the purchase of the villa, the court was required to award each their respective nonmarital interests in the property. Indeed, it is our deference to the family court's findings of fact that requires the parties be awarded their respective nonmarital interests. On remand, the Court is directed to apply the formula set forth in *Brandenburg* to the division of the St. Maarten villa. Only after it has restored each party their nonmarital interest are the factors delineated in KRS 403.200 and an award of maintenance, if any, appropriate. The court is not permitted to usurp the dictates of the General Assembly mandated by KRS 403.190 *in lieu* of a maintenance award.

We recognize that the family court's award in this case was presumably based on its supposition that its decree would

encounter difficulty in its enforcement in St. Maarten and the avoidance of a maintenance issue. However, the same factors when awarding maintenance are simply not present in the restoration of nonmarital property.

Based on the foregoing, the case is reversed and remanded for an award of nonmarital property to each party in the St. Maarten villa. After the restoration of the nonmarital interests, the court shall determine the equitable division of the marital interest in the villa. The trial court is advised that at oral argument each party agreed to a reasonable sale of the villa to determine its value.

ALL CONCUR.