RENDERED:  FEBRUARY 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0384-MR


CAREY LEIGH MEWES                                               APPELLANT


v.
APPEAL FROM DAVIESS CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE ANGELA THOMPSON, JUDGE
ACTION NO. 23-CI-00930


CHRIS KENNETH MEWES                                             APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND TAYLOR, JUDGES.

EASTON, JUDGE:  Appellant (Carey) is challenging the Daviess Family Court's

finding in this divorce case that the marital residence was Appellee's (Chris) non-

marital property.  The family court determined that Chris had presented sufficient

evidence to overcome the presumption that the marital residence was marital

property, and it awarded the entirety of it to him as his non-marital property. Having reviewed the record and the applicable law, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Carey and Chris were married in November 2000 in Illinois. In 2003 Carey filed for divorce while both parties were still living in Illinois, and then she moved to Kentucky. The parties reconciled, and Chris followed Carey to Kentucky. The Illinois divorce action was dismissed, and the parties' marriage remained intact until they again separated in August 2023. Carey filed this divorce action in October 2023.

The family court held a final hearing in two parts, beginning in October 2024 and concluding in November 2024. The family court issued its final decision in January 2025, dissolving the marriage and resolving the issues of property distribution. The sole issue on appeal is about the marital residence. Chris maintained that the marital residence was his non-marital property, while Carey argued the residence was marital property.

## STANDARD OF REVIEW

"The question of whether an item is marital or nonmarital is reviewed under a two-tiered scrutiny in which the factual findings made by the court are reviewed under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed de novo." *Smith v.*

*Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006). A trial court's factual findings are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## ANALYSIS

The disposition of property in a dissolution of marriage action is governed by KRS[1] 403.190. This statute reads, in relevant part:

> (1) In a proceeding for dissolution of the marriage . . . , the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:
>
> > (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
> >
> > (b) Value of the property set apart to each spouse;
> >
> > (c) Duration of the marriage; and
> >
> > (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.
>
> (2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

---

[1] Kentucky Revised Statutes.

-3-

(a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

(3) All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

"Thus, in dissolution of marriage actions, a trial court's division of the parties' property requires a three-step process: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably

-4-

divides the marital property between the parties." *Travis v. Travis*, 59 S.W.3d 904, 908–09 (Ky. 2001) (footnotes omitted).

Carey claims the family court erred by awarding the entire value of the marital residence to Chris as his non-marital property. She first argues that Chris failed to overcome the presumption that all property acquired after a marriage is marital property. Alternatively, she argues that even if he had presented sufficient evidence to overcome the presumption, she presented sufficient evidence that Chris had gifted Carey half ownership of the property. She additionally argues the family court erred when it did not assign a value to the property.

Both parties agreed that Chris owned property in Illinois prior to the marriage. They also agreed that he sold that property when the parties reconciled and Chris moved to Kentucky to be with Carey. It is undisputed that the proceeds from the sale of that property were kept in a separate account. Chris testified that he used those funds to purchase and remodel the marital residence. Carey testified that she did not know how Chris paid for the residence, but she suspected that the money came from that source. The parties never carried a mortgage or any other related debt on the marital residence.

The parties began residing together in Kentucky in early 2004. They rented their residence for several years, while actively looking for a house to

purchase. In 2008, Chris found this property for sale by auction. Both he and Carey looked at the property, and Chris was the highest bidder at the auction. They closed on the property at the auctioneer's office on June 20, 2008. Chris paid the full purchase price of $167,000 on that date.

The parties disagreed as to a conversation that may or may not have taken place at the auctioneer's office. Carey testified that while they were signing the Bill of Sale, Chris told her she needed to sign the document, because "this is your house too." Chris denies that conversation ever occurred, and he testified that he did not want Carey's name on any documents, including the deed to the property. Her name was ultimately included as a grantee on the deed to the property, which is not a controlling factor in determining whether a gift occurred. "Neither title nor the form in which property is held determines the parties' interests in the property; rather, 'Kentucky courts have typically applied the "source of funds" rule to characterize property or to determine parties' nonmarital and marital interests in such property.'" *Sexton v. Sexton*, 125 S.W.3d 258, 265 (Ky. 2004).

Once the house was purchased, the couple spent almost a year remodeling the home. Carey testified that she picked out what cabinets and countertops she wanted, and Chris bought them. She stated she did not question where the money for any of the remodeling came from, as she was a stay-at-home

-6-

mother to the parties' young children at this time. She stated she did some of the painting in the home, while Chris did most of the other remodeling work himself.

Chris testified in detail as to the remodeling work done on the home, which included replacing floors and sheetrock in several rooms, rewiring rooms, building new walls and closets, and plumbing work. He did that type of work. He paid all the expenses of the remodeling.

As for the non-marital source of the funds used, Chris introduced two deeds into evidence regarding the property in Illinois. Both deeds name the grantor as being "Peoples National Bank of Grayville, n/k/a Integra Bank As Trustee under provisions of a Trust Agreement dated the 1st day of March, 1994, known as Trust Number 65."[2] Chris testified that this was a blind land trust owned by his parents. He was a beneficiary of that trust, so when the property was sold, he received those proceeds. He testified he received a total of $195,000 from the sale of the two parcels of property after payment of commission; one piece of property sold for $140,000, while the other sold for $60,000. Chris did not have the original trust document or any other documents showing he was a beneficiary of this trust.

Chris further testified as to why he kept those funds separate. He told the family court he never forgot how it felt when he came home from work one

---

[2] Trial Record at pages 346 and 358.

day in Illinois to an empty house, and Carey had taken their first-born child and left to go to Kentucky. This was in 2003, when Carey filed the first divorce action. Chris told the family court that Carey required him to move to Kentucky to reconcile; he said the only reason he agreed was because he did not want to be away from his son. Chris stated that even once the parties established joint accounts, the funds from the Illinois property sale were always kept separate and were used for the marital residence in Kentucky.

The family court determined that Chris had overcome the presumption that the residence was marital property. KRS 403.190 contains a presumption "that all property acquired after the marriage is marital property unless shown to come within one of KRS 403.190(2)'s exceptions. A party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof." *Sexton*, 125 S.W.3d at 266. The presumption must be rebutted by "clear and convincing evidence." *Barber v. Bradley*, 505 S.W.3d 749, 755 (Ky. 2016).

The concept of "tracing" arises from this presumption. *Sexton*, 125 S.W.3d at 266. "'Tracing' is defined as '[t]he process of tracking property's ownership or characteristics from the time of its origin to the present.' In the context of tracing nonmarital property, '[w]hen the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously

owned property into a presently owned specific asset.'" *Id.* (citations and footnotes omitted). Carey argues Chris could not satisfactorily establish that the funds used to purchase the marital residence were his non-marital funds because he could not provide any documentation. Yet she concedes that she contributed no funds toward the house and its remodeling.

Carey does not dispute that Chris owned property in Illinois prior to the marriage. She agrees he kept the proceeds from the property sale in a separate account. She acknowledges that the marital residence never carried a mortgage. Carey even acknowledged that she suspected payments for the marital residence came from those sale proceeds. But Carey still takes issue with Chris not producing supporting documentation. While she acknowledges this state's highest court "relax[ed] some of the draconian requirements heretofore laid down" in *Chenault v. Chenault*, 799 S.W.2d 575, 579 (Ky. 1990), she claims that Chris should not receive this benefit as a college-educated business owner.

Chris provided two deeds, which documented the sale of property in Illinois. It is true that the deeds name a trust as the grantor, and Chris was unable to provide the trust document to prove he was a beneficiary of this trust. But Carey never disputes his testimony. She fully acknowledged that this property was sold, and Chris kept the proceeds separate. She never argues that the marital residence was purchased with marital funds. The home was purchased outright, with no

mortgage.  Carey makes no claim that they saved up for this purchase or otherwise used marital funds.  "When a nonmarital contribution is undisputed, the party claiming that property as nonmarital is relieved of any obligation to prove otherwise." *Fehr v. Fehr*, 284 S.W.3d 149, 158 (Ky. App. 2008).

Furthermore, at the time of the hearing, almost two decades had passed since the sale of the Illinois properties, and the bank which was the trustee of the trust was no longer in business.  It is not unreasonable that Chris no longer had this documentation.  Chris was able to sufficiently trace a specific asset he owned at the time of the marriage to property owned at the time of separation.  *See Turley v. Turley*, 562 S.W.2d 665, 668 (Ky. App. 1978).  The tracing involved here was relatively straightforward, and the family court did not clearly err by not requiring further specific documentation from Chris.

Carey next argues that the evidence shows Chris gifted Carey half ownership of the marital residence.  We review this issue as a factual finding, which is subject to the substantial evidence rule.  *Ghali v. Ghali*, 596 S.W.2d 31, 32 (Ky. App. 1980).  The family court correctly analyzed this question using the factors outlined in *O'Neill v. O'Neill,* 600 S.W.2d 493 (Ky. App. 1980).  These factors are 1) the source of the funds used to purchase the item, 2) the intent of the donor at the time as to intended use, 3) status of the marriage at the time of

transfer, and 4) whether there was a valid agreement that the property was to be excluded from the marital property. *Id.* at 496.

Based on these factors, the family court determined that Chris did not intend to gift Carey half the ownership of the marital residence. As to the first factor, the family court found, and this Court agrees, that the source of funds used to purchase the marital residence was Chris's non-marital property, that is, the proceeds of the sale of his prior-owned property. As to the second factor, the family court had to determine Chris's intent at the time the home was purchased. Chris testified that he always meant for the house to be solely his, while Carey testified Chris told her it would be her house too. The family court found Chris's testimony to be more credible, based upon his actions in keeping the funds used for the home entirely separate from any joint account with Carey. Those proceeds were kept separate for several years while the parties searched for a house.

The third factor is the status of the marriage at the time of the transfer. Carey testified that the marriage was good, and by that point the parties were raising their three children together. Chris stated that while the parties had reconciled after the 2003 divorce filing, he never forgot how it felt when he came home to an empty house. He told the family court he only agreed to reconcile and move to Kentucky so that he would not be away from his son. Chris said he

-11-

intentionally kept the money from the sale of his Illinois property separate from the parties' other funds.

The final factor is whether there was any agreement that the property would be excluded from marital property. Both parties agreed they never had a conversation about what would happen to the property if the parties divorced or if one were to pass away. There was never any explicit agreement, either orally or in writing.

The family court ultimately determined that these factors weighed against finding that Chris had gifted part of the marital residence to Carey. "As the fact-finder, the court had sole discretion to determine the quality, character, and substance of the evidence and the sole duty to judge the credibility of the witnesses." *Ball v. Tatum*, 373 S.W.3d 458, 465 (Ky. App. 2012) (citations omitted). When testimony is conflicting, "we will not substitute our decision for the trial court's judgment." *Id.*

This case presents such a situation, in which the testimony of the parties is conflicting as to two of the factors to be considered, the intent of the alleged donor and the state of the marriage at the time of the gift. The evidence presented here perhaps could have supported a finding that Chris gifted half of the marital residence to Carey, but the family court did not so find. "[I]n reviewing the decision of the family court, the test is not whether the appellate court would have

-12-

decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion." *B.C. v. B.T.*, 182 S.W.3d 213, 219–20 (Ky. App. 2005).

Carey cites *Barber*, *supra*, for her contention that the family court should have determined Chris made a gift of half the residence to her. We distinguish *Barber* from the case herein, mostly because the family court in *Barber* believed the wife's testimony that the husband clearly told her the house would be half hers. In this case, the family court determined Chris was more credible. "The decision of the trial court to believe Bradley's testimony over that of Barber was proper as the trial court was in the best position to assess the credibility of the witnesses' testimony and it had the choice to believe or disbelieve any portion of their testimonies." *Barber*, *supra*, at 758. The same is true in this case, although the outcome is different.

Carey's final contention of error is that the family court erred in failing to assign a specific value to the marital residence. Based on Chris's detailed explanations of all he had done, the family court determined that any increase in value to the home (other than general economic inflation over time) came from Chris's improvements, which included using the funds he obtained from the sale of the Illinois property, as well as his physical work of remodeling the home. "If the value of nonmarital property increases following the marriage as

-13-

a result of general economic conditions, the increase is deemed to be nonmarital. If the value increases, however, because of the joint efforts of the parties, it is divisible marital property." *Travis*, *supra*, at 907.

The family court acknowledged that Carey also did some of the physical labor in remodeling the home, such as painting, but it concluded that Chris performed most of the work. Carey argues she should receive some of the increase in equity based on her contribution to the marital home of raising the children and taking care of the home while Chris worked.

But this is not a case where the house was paid for with income earned while the spouses were married. No marital interest was *acquired* as the result of the work of Carey as a homemaker. KRS 403.190(1)(a). Carey did not show through any specific testimony of the appraisers (which the family court could have rejected anyway) that her painting during the remodeling or even in maintaining the home over the years were "significant activities . . . which contributed to the increase in value" of the property. KRS 403.190(2)(a).

Chris paid $167,000 for the residence. The parties each called an appraiser as their expert witness. These appraisers differed in their opinions of the value of the home. Chris's witness valued the home at $340,000, while Carey's appraiser valued it at $395,000. The home increased in value between $173,000 to $228,000.

The family court determined that it was not necessary to assign a particular value to the home, because Chris provided the funds and the work that went into increasing the value of the home. While we might prefer a finding of the value as part of the process of assessing property and eventually equitably dividing the marital property or answering other questions presented in a dissolution action, it was not required here given the determination that the entirety of the marital residence was Chris's non-marital property, and there is no challenge in this appeal about the division of any remaining marital property.

The facts of this case are exceptional when compared with those found in some of our reported cases determining marital versus non-marital valuation of improvements. Most cases involve a residence purchased prior to marriage, but with a mortgage which was partially paid after the marriage with clearly marital funds. Other cases involve residences, that even if entirely non-marital at first, both spouses improved using marital funds. Even with sweat equity, the shared, increased value may be established by a change in value. Not so here. There is no showing of increased value due to anything Carey had done.

In this case, the house was purchased entirely using Chris's non-marital funds and never carried a mortgage. The improvements were also entirely funded with Chris's non-marital funds. Chris himself did the labor which could have increased the value of the property. Because of this, we determine that even

if it was error for the family court to fail to assign a specific value to the home, it is harmless error, as both the house and its improvements are Chris's non-marital property. *See Hunter v. Hunter*, 127 S.W.3d 656, 663 (Ky. App. 2003) ("Because the parties failed to provide any independent expert evidence on the fair market value of the real property and the DRC based the marital portion, or increased value in the property, solely on the improvements, any error in the valuation of the nonmarital portion would be irrelevant since it would belong to Ronald regardless of the amount.").

We understand this outcome may seem unfair to Carey; she is receiving no portion from the marital home she lived in for many years. But Carey was unable to dispute that Chris paid for the residence entirely from non-marital funds and exclusively used his non-marital funds to renovate the home. Sympathy may pull for Carey to some extent. But the courts cannot make decisions based on sympathy. The family court did not err in its factual findings or its legal conclusions in this case. It in no way abused its discretion.

## CONCLUSION

The family court properly awarded the marital residence to Chris as his non-marital property. The Order of the Daviess Family Court is AFFIRMED.

ALL CONCUR.

-16-

BRIEFS FOR APPELLANT:

Allison Spencer Russell
Louisville, Kentucky

BRIEF FOR APPELLEE:

J. Andrew Johnson
Owensboro, Kentucky