**Elizabeth Grey DAVIS Appellant,**

v.

**Fred DAVIS, Executor of the Estate of Frank Marshall Davis Appellee.**

**Fred DAVIS, Executor of the Estate of Frank Marshall Davis Cross–Appellant,**

v.

**Elizabeth Grey DAVIS Cross–Appellee.**

Nos. 87–CA–207–MR, 87–CA–145–MR.

Court of Appeals of Kentucky.

Aug. 25, 1989.

M. Ronald Christopher, Randall A. Hutchens, Christopher & Hutchens, Warren K. Hopkins, Christopher & Hopkins, Murray, for appellant/cross-appellee.

Stephen C. Sanders, Murray, for appellee/cross-appellant.

Before GUDGEL, LESTER and McDONALD, JJ.

McDONALD, Judge.

Elizabeth Davis and Fred Davis, executor of the estate of Frank Marshall Davis, have appealed and cross-appealed from the judgment of the Calloway Circuit Court as it pertains to the characterization and division of assets accumulated during the marriage of Elizabeth and Frank.

The Davises were married in 1974. It was the second marriage for both, and each had children from a previous marriage. After ten years of marriage, Frank commenced this dissolution action in February, 1984. A decree of dissolution was entered on January 2, 1985, which reserved for later disposition all property-related issues. There were several parcels of real property involved with marital and nonmarital aspects. A voluminous record was amassed, and the matter was further complicated by Frank's death a month after the divorce decree was entered. Overall, the trial court did an outstanding job sifting through the evidence and resolving the financial entanglements of the parties. In the appeal and cross-appeal, the parties contest the disposition of the following items of property: Frank's vested pension, two term life insurance policies on Frank's life, and real property where the marital residence was located.

When Frank filed for dissolution he was very ill from lung cancer and aware that he would not live much longer. He immediately, without the trial court's knowledge, manipulated certain assets in an attempt to divest Elizabeth of her interests therein and to leave her with as little as possible. Fred, Frank's brother, who was substituted as the party petitioner in the dissolution proceedings, candidly admits that Frank "did not wish to reward" Elizabeth as she had shot Frank with a shotgun.

Frank had worked for the Chrysler Corporation and was retired before the dissolution commenced. He had a vested pension that provided him with two options. Under the first option Frank could elect to receive 120 monthly payments, each equal to 5% of his total contribution to the plan. The second option, the surviving spouse option, would pay a lesser monthly benefit to Frank during his life, but would pay his surviving spouse 60% of his monthly entitlement for the remainder of her life. Frank originally elected the second option which would have paid his surviving spouse $325.85 per month. After he filed the dissolution petition, he revoked the second option and exercised the first option, eliminating any chance that Elizabeth would receive benefits after his death.

■ Elizabeth's first argument is that the trial court erred in failing to include in the marital estate the sum of $86,571.83, which represents $325.85 times her life expectancy. She urges that Frank's election to take the option providing for a fixed number of monthly benefits constituted a dissipation of the marital estate. Fred, on the other hand, argues that it was reasonable for his decedent to choose to receive greater benefits in his lifetime as he was incapacitated and unable to work.

We agree with the trial court's conclusion that Frank's choice of options did not constitute dissipation. Regardless of which option Frank elected, Elizabeth would not have been entitled to a lifetime monthly benefit as she was not Frank's "surviving spouse" at the time of his death and, under the terms of the pension, could not have received surviving spouse benefits. The trial court did include in the marital estate the unpaid balance of the pension plan owed to Frank of which Elizabeth was awarded 50%. We believe she was thereby awarded her appropriate share of the fund.

■ Elizabeth's next assignment of error concerns the trial court's disposition of two group term life insurance policies on Frank's life. These policies were provided by Frank's employer and had no present or cash surrender value. Prior to his death Frank, without notifying the court or Elizabeth, changed the beneficiary from Elizabeth to others, including his two sons and a step-grandson. Elizabeth argues these policies were marital property and that she had an interest therein. Fred insists the policies were not property contemplated by KRS 403.190 and that Frank had no duty to disclose these assets to the court.

In this jurisdiction the present cash value of a life insurance policy obtained with marital funds is marital property subject to a division under KRS 403.190. *See Leveck v. Leveck*, Ky.App., 614 S.W.2d 710 (1981). Fred asserts that a term policy with no cash or present value is not subject to division. We agree. Although it cannot seriously be argued that the right to dispose of over $100,000 worth of insurance proceeds is not a valuable right, nevertheless it is not property and not subject to division under KRS 403.190(2) and (3). *See,* for example, *Metropolitan Life Insurance Company v. Tallent*, 445 N.E.2d 990 (Ind. 1983).

Under KRS 403.190(2) all property is "marital property" if acquired during the marriage. By implication, the property must also be acquired before the death of a spouse. Here, the property (insurance proceeds) was realized only after death, and therefore was not acquired during the marriage. Frank's right to name the beneficiary, which was acquired during the marriage, was a right only, of indeterminable value, if any. Even if Frank had disclosed the policies to the trial court during the pendency of the litigation, the trial court could not, we believe, have required that he maintain Elizabeth as a beneficiary of a portion of the proceeds under the facts of this case. A named beneficiary acquires no right other than a defeasible vested interest, a mere expectancy.[1] On this issue we affirm the trial court.

■ Lastly, in the direct appeal Elizabeth argues the trial court abused its discretion in awarding her only $1,500 for her attorney's fees. She had requested over $8,000. As she has neglected to include her attorney as a party to the appeal, this issue has not been preserved for our review. *Wilhelm v. Wilhelm*, Ky., 504 S.W.2d 699 (1973).

■ Fred has raised only one issue in his cross-appeal. He asserts the trial court erred in its characterization of a piece of realty in Calloway County as being marital property. Fred contends the property was purchased with the proceeds of the sale of property in Illinois inherited by Frank before his marriage. There is no question that the Illinois property was Frank's nonmarital property. He sold the property on October 20, 1979, and realized $79,835 from the sale. Within three days he and Elizabeth purchased two adjacent tracts of property in Calloway County for $81,500. The trial court concluded that Frank neglected to adequately trace his nonmarital proceeds to the purchase of the property pursuant to the dictates of *Allen v. Allen*, Ky.App., 584 S.W.2d 599 (1979).

---

**1.** For a general discussion of the topic, *see* Graham & Keller, *Kentucky Domestic Relations Law,* Text 17.17 (1988).

Whether the documentary evidence provided by Frank constitutes sufficient tracing is unnecessary for us to decide. As Fred points out in his brief, Elizabeth testified that, with the exception of about $2,000, the Calloway County property was purchased with the proceeds of the sale of Frank's nonmarital property. This admission on her part, we hold, relieves Frank of the burden to technically trace the proceeds from one account to another. Thus, on remand the court should amend its judgment to reflect Fred's decedent's nonmarital interest in this property.

The judgment of the Calloway Circuit Court is affirmed on direct appeal, and reversed and remanded on the cross-appeal for entry of a new judgment consistent with this opinion.

All concur.

