James Mark REARDEN, Appellant,

v.

Kimberly Joyce REARDEN, Appellee.

No. 2006–CA–002362–MR.[1]

Court of Appeals of Kentucky.

Oct. 9, 2009.

---

1. This is one of two cases considered simultaneously by this Court. This appeal pertains primarily to the classification of property following dissolution of the parties' marriage. The second case, *Crowder v. Rearden*, 296 S.W.3d 445 pertains to the court having found Kimberly to be in contempt of its orders.

Patricia Tierney Kidd, Louisville, KY, for appellant.

C. Thomas Hectus, Louisville, KY, for appellee.

Before LAMBERT and NICKELL, Judges; HENRY,[2] Senior Judge.

*OPINION*

NICKELL, Judge.

James Rearden (James) appeals from a judgment of the Jefferson Family Court classifying various items as marital property, including his military pension. He also appeals the trial court's denial of his request for attorneys' fees in the wake of the court holding his former wife, Kimberly Rearden, now Kimberly Johnson Crowder (Kimberly), in contempt for willfully disregarding court orders pertaining to the sale of the marital home. After reviewing the record and the law, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## I. Factual Background

On May 1, 2005, while stationed in California, James, a career Navy man, wrote a $3,000.00 check from his personal money market account and made a down payment on a home in Louisville, Kentucky. On May 13, 2005, the realtor transferred the $3,000.00 deposit from James's account and applied it to the purchase of the home. On May 20, 2005, James married Kimberly, a surgical nurse, in California.

In June 2005, James officially closed on the marital home with a purchase price of $299,000.00. During this time, James also used a personal credit card to purchase a treadmill, a bed frame and mattress, and a dining room table and chairs for the marital home. James paid a total of $3,855.94 for these items from a combination of his personal money market account, to which Kimberly did not have access, and from a joint bank account, which she could access.

Two months after the wedding, James retired from the Navy with a total of 270 months of service credit, and began receiving $2,165.00 in monthly military retirement benefits. In November 2005, just six months after the wedding, he filed for dissolution of the marriage. No children were born during the short-lived union. The primary task of the trial court in the dissolution action was classifying assets as marital or non-marital property.

Since Kimberly was married to James during just two months of his more than twenty-year Navy enlistment, the court found she was entitled to a fraction of his retirement benefits, calculated without dispute to be $8.08 per month for the remainder of James's life. However, rather than requiring James to make the small monthly payments, the court ordered him to pay Kimberly a lump sum of $3,000.00, finding that amount "to be a reasonable calculation of [Kimberly's] total expected interest from [James's] retirement." The trial court did not explain how it arrived at the $3,000.00 figure. At $8.08 per month, James, who was born in October 1964, would have to live another 30.9 years to justify the lump sum payment of $3,000.00 to Kimberly.

During the dissolution hearing, the court drew these conclusions: James's $3,000.00 deposit toward the purchase of the marital home, which came from his personal money market account prior to the marriage, was marital property; the personal property he purchased with his personal credit card after the marriage was marital property; Kimberly was entitled to an immediate $3,000.00 lump sum payment from

**2.** Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

James as the trial court's estimate of the future value of her share of James's retirement benefits ($8.08 per month for approximately thirty years); Kimberly was in contempt of court due to her willful disregard of court orders pertaining to the sale of the marital home; and James was not entitled to an award of attorneys' fees. This appeal followed.

## II.  Analysis

James raises five issues in this appeal, four of which concern the trial court's designation of contested property as marital property.  The fifth issue is whether the court abused its discretion in denying his request for attorneys' fees.

### A.  Standard of Review

■■■ In determining whether an item has been properly designated as either marital or non-marital property, we first consider the trial court's factual findings, to which we give deference because the trial court was in the best position to judge the credibility of the witnesses and the weight of the evidence.  *Smith v. Smith,* 235 S.W.3d 1, 6 (Ky.App.2006).  Once we have determined the trial court did not commit clear error in reaching its findings of fact, we review *de novo* the trial court's ultimate legal classification of whether the property was marital or non-marital.  A finding of fact is clearly erroneous if it is unsupported by substantial evidence which is defined as proof sufficient to induce conviction in the mind of a reasonable person.  *B.C. v. B.T.,* 182 S.W.3d 213, 219 (Ky.App.2005).

### B.  Down payment on future marital home

■■■ The first question we address is whether a pre-wedding down payment of $3,000.00, made by James from his personal money market account on a home that was to become the marital residence, was properly classified by the trial court as marital property.  Without explanation, the court stated only that "[p]etitioner did not sustain his burden related to his non-marital claim of contributing $3,000.00 to the down payment of the home."  James argues the deposit should have been classified as non-marital property because it was made prior to the marriage and the money used to pay the deposit came from his individual bank account.  Kimberly claims the trial court correctly found the entire $3,000.00 deposit to be marital property because James insufficiently traced a $526.87 refund from that deposit, received during the marriage, to his personal money market account.

During a dissolution proceeding, a trial court must first "assign each spouse's property to him" and then divide the marital property in just proportions.  KRS 403.190(1).  Property acquired during the marriage is presumed to be marital property.  *Id.*  To rebut this presumption, KRS 403.190(3) specifies the party claiming the asset acquired during the marriage is non-marital must show the property satisfies an exception described in KRS 403.190(2)(a)–(e), such as "[p]roperty acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent[.]"  KRS 403.190(2)(b).  *See also Sexton v. Sexton,* 125 S.W.3d 258, 266 (Ky.2004).

■■■ To deem property as marital or non-marital, Kentucky courts use the "source of funds" rule meaning property is characterized based upon the source of funds used to acquire the asset.  *Travis v. Travis,* 59 S.W.3d 904, 909 (Ky.2001).  If the non-marital property does not exist at the time of dissolution, the spouse claiming the property is non-marital must adequately "trace" the previously owned asset into a currently owned asset.  *Id.*  To satisfy the tracing requirement, the party must

prove when the property was acquired and transferred, the asset into which it was transferred, and its value at those times. *Chenault v. Chenault,* 799 S.W.2d 575, 578 (Ky.1990).

James provided clear proof that he transferred $3,000.00 from his personal money market account to the realtor, *prior* to the marriage, to make a down payment on the marital home. James gave the deposit to the realtor on May 1, 2005, twenty days prior to the marriage. The realtor transferred the funds from James's account to the real estate agency on May 13, 2005, seven days before the wedding. In our analysis, it matters not that the closing on the home occurred after the wedding because the down payment was an identifiable portion of the home's purchase price and it was made prior to the wedding. Therefore, James clearly established the down payment used to acquire the marital home came from his personal non-marital account prior to the marriage.

However, as Kimberly notes, James did not trace back to his private non-marital bank account a refund of $526.87 received from the down payment during the marriage as the result of calculations within the loan closing documents. James claimed he opened a joint bank account for himself and Kimberly with the refund, but offered no proof of this alleged use and did not distinguish the refund from marital funds deposited into the joint bank account during the marriage.

As a result, we hold the trial court abused its discretion in classifying the entire $3,000.00 deposit as marital property. Instead, only the $526.87 refund should be classified as marital property, and the remaining $2,473.13 constitutes James's non-marital property. We therefore reverse

and remand for further proceedings consistent with this opinion on this issue.

## C. Personalty purchased during marriage with James's personal credit card

■ The second issue we address is whether the trial court erred in classifying three items of personalty,[3] purchased with James's personal credit card during the marriage, as marital property. James argues the items should be classified as non-marital property because (1) Kimberly admitted during the dissolution hearing that the items were bought with money from James's personal money market account, and (2) two transfers from James' personal account—one to his credit card account and the other to the parties' joint bank account—show the property was purchased with non-marital funds. We disagree and affirm the trial court's classification of these items as marital property because James did not sufficiently prove the property was purchased with his non-marital funds and Kimberly did not testify James used non-marital funds to purchase the treadmill, dining room suite and bed/mattress.

James admitted buying the three items during the marriage but claimed they were nonetheless non-marital because he paid for them by using his personal credit card. Since the items were presumed to be marital assets because they were purchased during the marriage, to have them classified as non-marital property, James had to overcome the presumption that the items were bought with funds from the couple's joint bank account as opposed to his personal account. To satisfy this burden, he cited two wire transfers from his private account to his credit card account and the couple's joint account around the time he

---

**3.** A dining room table and chairs valued at $1,890.00; a bed frame and mattress valued at $1,000.00; and a Nordic Track treadmill valued at $965.94.

purchased the property and claimed under oath that these transfers were used to pay for the property purchased with his personal credit card. According to the record, some credit card transactions were paid using funds from the couples' joint account. Thus, the trial court found the wire transfers were insufficient to sustain his burden and we agree.

Relying on *Davis v. Davis*, 775 S.W.2d 942, 945 (Ky.App.1989), James argues tracing of the funds used to purchase the items was unnecessary because Kimberly did not challenge his testimony that he used non-marital funds to purchase the items. We deem *Davis* to be factually distinct and therefore not controlling. In *Davis*, the non-moving spouse testified two parcels of land were purchased almost entirely with non-marital property. As a result, a panel of this Court held the non-moving spouse's admission relieved the moving spouse's "burden to technically trace the proceeds from one account to another." *Id.* However, that is not what happened here. James asserted non-marital funds were ultimately used to pay for the three items and Kimberly did not question his testimony on cross-examination or contradict him during her own trial testimony. In light of the record, which shows joint bank funds were used to pay for the items, we are unwilling to say the trial court abused its discretion in characterizing these three pieces of personalty as marital property.

One correction is necessary, however. In its findings of fact, the trial court listed the value of the treadmill as $320.00. The record, however, shows the invoice price for the machine was $965.94. Because the parties had agreed to use the invoice price as the value of these items, on remand, the court is directed to correct the value of the treadmill to reflect a figure of $965.94 and to correct any other calculations based upon this figure. Otherwise, this aspect of the court's opinion is affirmed.

### D. James's military retirement benefits

The third issue we address is whether Kimberly is entitled to a share of James's military retirement benefits. Our Supreme Court has held military retirement pay is marital property and therefore divisible upon dissolution. *Jones v. Jones*, 680 S.W.2d 921 (Ky.1984). Since the marriage lasted only two months of his military enlistment, James asserted Kimberly was not entitled to any portion of his vested military pension because he read 10 U.S.C. § 1408(d)(2) as allowing payments to a spouse only if the marriage lasted ten years during which James earned ten years' of military service. We dispelled this theory in *Carranza v. Carranza*, 765 S.W.2d 32, 33–34 (Ky.App.1989), when we held § 1408(d)(2) does not require a ten-year marriage as a threshold to dividing a military pension. We went on to specify the reference to a ten-year marriage "only affects the right of the nonmilitary spouse to require the military to issue a separate check directly to [him/her] to enforce a court-ordered property division." *Id.* Thus, Kimberly may have been James's bride for only two months of his enlistment, but she is nonetheless entitled to a share of his military retirement benefits as a result of the marriage, brief though it may have been. Therefore, we affirm the trial court's conclusion that Kimberly was entitled to a portion of James's pension.

### E. Trial court's lump sum payment in lieu of monthly payments

James's fourth claim is that the trial court erred in transforming Kimberly's monthly award of $8.08 from his military retirement benefits for the remainder of his life to a present-day lump sum payment of $3,000.00. Trial courts have wide discretion in dividing marital property. *Davis v. Davis*, 777 S.W.2d 230, 233 (Ky.

1989). Converting monthly payments into a lump sum payment is permitted under *Overstreet v. Overstreet,* 144 S.W.3d 834, 839 (Ky.App.2003).

While the trial court did not abuse its discretion in converting Kimberly's monthly interest to a lump sum payment, we must reverse and remand for an explanation of how the court determined $3,000.00 would be a fair calculation of her future interest. As James noted in his brief, there was no testimony about his life expectancy, no assessment of the current value of retirement benefits, and no consideration of actuarial tables. Without some evidence in the record, we cannot determine whether the court's math was accurate and we cannot agree with its conclusion that $3,000.00 was a "reasonable calculation of [Kimberly's] total expected interest from [James's] retirement." Therefore, we must hold the trial court abused its discretion and reverse and remand for recalculation of the value of Kimberly's interest with an explanation of the formula used to reach that figure.

### F. Denial of attorneys' fees

The fifth and final issue is whether the trial court erred in denying James's request for attorneys' fees after finding Kimberly to be in contempt of court on more than one occasion. We will reverse only upon a showing of an abuse of discretion. *Smith v. City of Loyall,* 702 S.W.2d 838, 839 (Ky.App.1986).

When awarding attorney's fees, KRS 403.220 requires the trial court to consider the financial resources of both parties. If their resources are substantially equal, each spouse will be required to pay his or her own attorneys' fees; if their resources are grossly disproportionate, the court may award attorneys' fees to the party with fewer resources. *Beckner v. Beckner,* 903 S.W.2d 528, 530 (Ky.App.1995). In the case *sub judice,* James filed numerous motions asking that Kimberly be ordered to show cause for her noncompliance with various court orders. Kimberly was twice found to be in contempt for willful disregard of court orders, first in the findings of fact and conclusions of law entered by the trial court at the end of the trial on October 18, 2006, and second on June 21, 2007, following a hearing in a separate contempt action.

James argues the court should have awarded him attorney's fees because Kimberly's repeated willful disregard of court orders caused him, through his attorney, to file numerous motions to compel her to act. As a result, he incurred attorneys' fees and believes Kimberly should be made to pay those fees since they are wholly a result of her recalcitrance. However, KRS 403.220 does not authorize a trial court to consider fault or willful disobedience, or anything beyond the financial positions of the parties. Furthermore, *White v. Sullivan,* 667 S.W.2d 385, 389 (Ky.App. 1983) (citing *Holsclaw v. Stephens,* 507 S.W.2d 462 (Ky.1974); *Nick's Auto Sales v. Radcliff Auto Sales,* 591 S.W.2d 709 (Ky.App.1979)), recognized that "Kentucky Courts have been consistently reluctant to uphold awards of attorneys' fees [in civil contempt proceedings] except in those particular instances when such fees are authorized by statute or a contract expressly providing therefor." James has not cited us to contract language or a statute specifically authorizing an award of attorneys' fees in this context.

Additionally, we note that in the companion appeal dealing specifically with the finding of contempt, James *was awarded* attorneys' fees in the amount of $1,200.00. Since the same mulish conduct on Kimberly's part spawned both findings of contempt, it appears James may be attempting to "double dip" and receive attorneys' fees for *both* the contempt action *and* the

dissolution action. From the record, it appears James has greater financial strength than Kimberly. Therefore, using KRS 403.220 as our guide, the court did not abuse its discretion in denying James's request for attorneys' fees.

### Conclusion

For the foregoing reasons we affirm the circuit court's decision in part, but reverse and remand that portion of the opinion that erroneously found James's pre-marital $3,000.00 down payment on the marital residence to be marital property. Second, the trial court erred in finding the present-day value of Kimberly's share of James's military retirement benefits was $3,000.00 because it failed to provide any evidence supporting such a finding. We affirm the trial court's decision regarding the three other issues presented to this Court.

ALL CONCUR.